

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 27, 1971

Honorable Harry P. Burleigh          Opinion No. M-980
Executive Director
Texas Water Development Board        Re:  Does the "cumulative
301 West Second Street                    average effective rate"
Austin, Texas 78711                       referred to in Article
                                          8280-9, Section 12(g),
                                          V.C.S., have included
                                          in its computation the
                                          current outstanding
                                          interest on long-term
Dear Mr. Burleigh:                        federal contracts?

          In your recent letter you request this Office to
render an opinion on the following question:

               "Does the 'cumulative average effective
          rate' referred to in Article 8280-9, Section
          12(g), V.C.S., have included in its computa-
          tion the current outstanding interest on long-
          term federal contracts?"

          In connection with the above question, you advise that
Section 49-d of Article III of the Constitution of Texas author-
izes the Texas Water Development Board to enter into long-term
contracts with the federal government for the acquisition and
development of storage facilities in reservoirs.  Such contracts
when executed shall constitute general obligations of the State
of Texas in the same manner and with the same effect as state
bonds issued under the authority of Section 49-c of Article III
of the Constitution of Texas.  The Legislature, pursuant to
constitutional authority, has prescribed terms and conditions
under which the Texas Water Development Board can sell or
transfer its interest in any acquired storage facilities.
Article 8280-9, Sec. 12(e), 12(f) and 12(g), Vernon's Civil
Statutes.  Section 12(g), which prescribes a formula that the
Texas Water Development Board is to use in determining the sales
price of the State's interest in a project acquired under a
contract, reads in part as follows:

               ". . . the price shall be the sum of the
          'direct cost of the Board in acquiring same,'

-4778-

> . . ., <u>plus</u> an interest charge thereon of one-half of one percent (1/2 of 1%) per annum from the date of acquisition of such facilities by the Board, <u>plus interest at the cumulative average effective rate on all Texas Water Development Bonds sold up to the date of the sale of such facilities</u> for each of those years or portions of years on which the Board paid interest to the other party(ies) to the contract, <u>plus</u> the Board's cost of operating and maintaining the facilities being sold or transferred from the date of acquisition to the date of transfer, <u>less</u> any payments received by the Board from the lease of such facilities or the sale of water therefrom." (Emphasis added.)

Your question is directed to that portion of the formula which provides that the selling price of the facilities is to include "interest at the cumulative average effective rate on all Texas Water Development Bonds sold up to the date of the sale of such facilities."

The term "Texas Water Development Bonds" is referred to in Section 49-c of Article III of the Constitution as follows:

> "The <u>bonds</u> authorized herein or permitted to be authorized by the Legislature shall be called 'Texas Water Development Bonds,' shall be executed in such form, denominations and upon such terms as may be prescribed by law, . . . ." (Emphasis added.)

It is apparent from this reference that long-term federal contracts were not intended to come within the meaning of the term Texas Water Development Bonds.

As further evidence that long-term federal contracts are not to be included within this portion of the formula we note that the cumulative average effective interest rate is to be determined from the Texas Water Development Bonds sold up to the date of the sale of the facility.

Once we have determined the cumulative average effective interest rate from rates applicable to Texas Water Development Bonds sold up to the time of the sale of the facility, we

are faced with a further difficulty of interpretation in apply-
ing this rate to the "direct cost" of the facility for the
purpose of arriving at this portion of the selling price.
"Direct cost" is defined in Article 8280-9, Sec. 12(f) as
". . . the principal amount the Board pays or agrees to pay for
such facilities."

If the rate on bonds is applied to the total "direct
cost" of the facility, we might recover an interest charge
without regard to the source of the cost element. If bond money
finances the whole cost of the facility to be sold, no problem
exists. On the other hand, if the facility is financed in
part by bond money and in part through long-term federal con-
tracts, then the application of our previously defined cumulative
average effective interest rate to the whole of the "direct
cost" might fail to account for all of the interest paid out on
the federal contract applicable to the facility in question
to the extent that the interest rate on federal contracts
exceeded the cumulative average effective interest rate on bonds.
This procedure would not account for all of the interest costs
incurred in purchase of the facility.

This difficulty may be overcome by adding the entire
interest on the federal contracts applicable to a particular
facility to the cost of its operation and maintenance as provided
in the fourth item of Section 12(g). However, this would create
an additional interest charge not authorized. This is because
the cumulative average effective interest rate on bonds sold
applied to the "direct cost" of the facility will automatically
account for all the interest cost connected with a particular
facility, except where the interest rate on the federal contract
exceeds the cumulative average effective interest rate on
bonds. There is no necessity at this date based upon the exist-
ing federal contracts, to require a separate collection of the
interest cost on long-term federal contracts under maintenance
and operating costs.

The only circumstance where recovery of such interest
as a component of maintenance and operation expense is justifiable
would occur in the event the cumulative average effective interest
rate were applied against that portion of the direct cost of the
facility which could be attributable solely to bond money.
If that were done, then the interest on the cost applicable
to long-term federal contracts, if any, could be recovered as
an item under maintenance and operation. This method of cost
recovery would avoid the aforesaid difficulties of double or
additional interest charges inherent in the other suggested

methods, and would permit total cost recovery in compliance with the constitutional and statutory requirements. We are, of course, aware that nothing in this opinion should be understood as preventing the State from securing the highest possible price for the sale of these facilities. We are only concerned herein with interpreting the statutory requirements for establishing a minimum selling price which accounts for all the cost elements.

As a result of the foregoing analysis, we are of the opinion that the phrase "cumulative average effective rate", referred to in Section 12(g) of Article 8280-9, Vernon's Civil Statutes, does not have included in its computation the current rate of interest being charged the State on long-term federal contracts, but that any attempt to determine selling price of a particular facility must consider that the rate of interest on such federal contracts might exceed the cumulative average effective rate. To the extent it does, care should be taken to fully recover the excess, without at the same time requiring collection of what would amount to a double or additional interest charge not authorized by the statute. To this end, we are of the further opinion that the cumulative average effective rate should be applied only to that portion of the "direct cost" of the facility attributable to monies from the sale of Texas Water Development Bonds, and that the interest paid on long-term federal contracts connected with the development of the facility be collected under maintenance and operating expenses. In no event, however, should the selling price of the facility, determined in this manner, be less than the actual total cost of the facility. To illustrate our holding: assume a $100,000 facility which was financed partly ($50,000) by Texas Water Development Bonds and partly ($50,000) by long-term federal contracts. The cumulative average effective rate on Texas Water Development Bonds sold to date is 5%. The rate of interest paid on the federal contracts is 6%. The selling price encompassing only the items with which we are here concerned would be determined as follows:

| | |
|---|---|
| Direct cost of the facility | $100,000 |
| Plus: (1) 5% of $50,000 (bond money) | 2,500 |
| (2) 6% of $50,000 (federal contract money) set out as maintenance and operation expense | 3,000 |
| TOTAL SELLING PRICE | $105,500 |

In this example, application of the 5% to the entire $100,000 of "direct cost" would result in only $5,000 added to the selling price, leaving us $500 short of the total cost. If it were permissible to add in the $5,000 and _still_ add the 6% on federal contracts to maintenance and operation expense, we would sanction an interest charge of $8,000 ($5,000 + $3,000) which would materially exceed the total expense. Our opinion is that this would not be a proper interpretation of what the Legislature intended in Article 8280-9, Sec. 12(g), supra.

S U M M A R Y

The phrase "cumulative average effective rate", referred to in Section 12(g) of Article 8280-9, Vernon's Civil Statutes, does not include in its computation the current rate of interest being charged the State on long-term federal contracts. The computation of actual interest expense incurred and to be recovered as an item of selling price shall be made by applying the cumulative average effective rate to only that portion of the "direct cost" of the facility which is attributable to monies from the Texas Water Development Fund, and by including the actual interest paid on long-term federal contracts connected with the development of the facility in the category of maintenance and operating expenses.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James H. Quick
Assistant Attorney General

APPROVED:
OPINION COMMITTEE:

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Honorable Harry P. Burleigh, page 6  (M-980)


Roger Tyler
Marietta Payne
Jack Goodman
John Reeves

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant